UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ARMANDO ORTEGA,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTOCKS, et al.,<br><br>    Defendants. | Case No. 13-cv-06016-JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 20, 29, 31 |

**INTRODUCTION**

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against officers of the San Jose Police Department, attorneys for the Santa Clara County Public Defender's Office, a private defense attorney, and investigators for the Santa Clara County District Attorney's Office.[1] The Court found cognizable Plaintiff's claims that the police officers (Officer Mattocks, Officer Benitez, Officer Scherry, Officer Ubarre and Sergeant Hunt) used excessive force during his arrest and thereafter filed false reports about the incident, and dismissed the remaining claims because they did not state cognizable grounds for relief under Section 1983.

The police officer defendants (hereinafter "Defendants") were served by the United States Marshal and filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the claims are untimely. The motion to dismiss was denied. Defendants then filed a motion for summary judgment with supporting declarations and exhibits. Plaintiff filed a

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 1, 15.)

brief in which he opposes Defendants' motion and also moves for summary judgment in his favor. Defendants filed a reply brief. Plaintiff thereafter wrote a letter to the Court requesting a subpoena duces tecum. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment and request for a subpoena are DENIED.

## BACKGROUND

Plaintiff sets forth his account of the events in his verified complaint (dkt. 1, hereinafter "Compl.") and his combined opposition and cross-motion for summary judgment[2] (dkt. 29, hereinafter "Opp.") and supporting exhibits (dkt. 28). Defendants arrested him shortly after midnight on March 22, 2007, in San Jose, California, after he got into a fight with his brother, Alex Rocha. (Compl. at 3.) Plaintiff had been homeless and was staying in a van in the driveway of Rocha's house. (*Id.* at 3-5.) Rocha and Plaintiff had a dispute over money, and Rocha turned off the electricity to the van. (*Id.* at 5-6.) Plaintiff and Rocha cursed at each other, Plaintiff broke two windows in the van with a hammer, and then he began to walk away. (*Id.* at 6.) Rocha hit Plaintiff with a broomstick four times, making it difficult for Plaintiff to stand and walk. (*Id.*; Opp. at 4.) Plaintiff took the broom away from Rocha, and walked around the corner with the broom and hammer in his hands. (*Id.*; Compl. at 7.) Plaintiff saw a police car pass by two streets away and threw the hammer and broom into a bush. (Opp. at 4.) The police car then arrived and Officer Mattocks got out of his car and pointed his gun at Plaintiff from about 15-25 feet away. (*Id.* at 4-5; Compl. at 7.) Plaintiff screamed "shoot me." (Compl. at 7.) Mattocks initially told Plaintiff not to move, and then he switched to a Taser gun and told Plaintiff to approach. (*Id.*; Opp. at 5.) Plaintiff initially yelled back that he was injured and could not stand and walk, but he

---

[2]Plaintiff attaches a "declaration" to his opposition/cross-motion, but instead of including his account of the events in the declaration, it states that he can testify to the matters set forth in his brief. (Dkt. 29.) The Court treats the facts set forth in his brief as though they had been included in a properly sworn affidavit.

then limped 6-8 feet towards Mattocks. (Opp. at 5.) Then Mattocks ordered him to stop and get down slowly, and Plaintiff did so, but while he was getting down to the ground, Mattocks tasered him for 15 seconds. (Compl. at 7; Opp. at 5.) Plaintiff yelled, "O.K. O.K.," and once he got down, Mattocks struck him on the lower back with his baton one time. (Compl. at 7; Opp. at 5.) Other officers then arrived and Plaintiff was handcuffed and taken to the emergency room. (Opp. at 6.)

Plaintiff alleges that he suffers severe back pain to this day. (Compl. at 8.) Plaintiff asserts that Officers Mattocks, Benitez, Scherry, Ubarre and Hunt falsely reported that Plaintiff had tried to get up and grab the broom before Mattocks tasered and struck him. (Compl. at 8.) Plaintiff further alleges that he suffers from "bipolar shizoaffective disorder," that at the time of the incident he had not taken his medication for three days because he believed that "people were trying to kill him and his family," and that he was on parole following his release from Atascadero State Hospital four months earlier. (Compl. at 3-4.)

In support of their summary judgment motion, Defendants submit declarations by Mattocks and Benitez. At the time of the arrest, Sergeant Hunt was the supervisor of Mattocks, Benitez and the other officer defendants. (Mattocks Decl. ¶ 7.) Mattocks and Benitez were in uniform and each driving their own marked police car when a dispatcher reported that a man had attacked his brother and broken windows with a hammer. (*Id.* at ¶¶ 7-8; Benitez Decl. ¶¶ 6-7.) Mattocks got to the scene first, and he saw Plaintiff carrying a broom and hammer. (Mattocks Decl. ¶¶ 9-10.) He got out of his car about 12-15 feet away from Plaintiff, and Plaintiff dropped the hammer on the ground. (*Id.* at ¶¶ 10-11.) According to Mattocks, Plaintiff approached him with the broom held high. (*Id.* at ¶ 11.) Mattocks pointed his gun at Plaintiff and ordered him to drop the broom and lie down, but, according to Mattocks, Plaintiff shook his fist, continued to approach Mattocks with the broom in his hand, and yelled, "Fuck you, motherfucker. Fucking

3

shoot me." (*Id.* at ¶¶ 12-13.) Mattocks called for backup, and Plaintiff dropped the broom, swung his arm and did not get down. (*Id.* at ¶¶ 14-15.) Officer Benitez then arrived and got out of his car, and he states that Plaintiff, with his broom and hammer at his feet, shook his fists, shouted obscenities, moved towards Mattocks, and did not follow Mattocks's orders. (Benitez Decl. ¶¶ 9-13.)

Mattocks and Benitez state that for "several minutes" Plaintiff shouted obscenities and did not follow orders to get down, and Benitez states that Plaintiff then resumed advancing towards Mattocks. (*Id.* ¶ 15; Mattocks Decl. ¶ 16.) Mattocks replaced his gun with a Taser gun, which he fired at Plaintiff from approximately five feet away for approximately 15 seconds, and Plaintiff immediately fell to the ground. (Mattocks Decl. ¶ 16; Benitez Decl. ¶ 15.) Plaintiff began to "struggle and resist" their efforts to arrest him, and he tried to get to his knees and reach for the broom. (Mattocks Decl. ¶ 18; Benitez Decl. ¶ 16.) Benitez then struck Plaintiff once on his back with his baton and used his knee to hold Plaintiff down. (Mattocks Decl. ¶ 18; Benitez Decl. ¶ 16.) Plaintiff stopped resisting, Defendant Scherry arrived, and the three officers handcuffed Plaintiff. (Mattocks Decl. ¶ 19.) Benitez states that Plaintiff had no visible injuries and did not complain of pain, but Mattocks states that Plaintiff complained of pain in his leg and back. (Mattocks Decl. ¶ 23; Benitez Decl. ¶ 20.) Defendants Hunt and Ubarre arrived shortly after and began their investigation. (Benitez Decl. ¶¶ 20, 22.) Mattocks then drove Plaintiff to the hospital for examination, and later that day, Plaintiff was booked into the Santa Clara County Main Jail. (Mattocks Decl. ¶ 23.)

Plaintiff was charged in Santa Clara County Superior Court with resisting, obstructing, or delaying a police officer (Cal. Pen. Code § 148), for assault with a deadly weapon (Cal. Pen. Code § 245), and for vandalism (Cal. Pen. Code § 594). Plaintiff pled no contest to these charges in July 2013, over six years later. (Defs. Request for Judicial Notice Exh. A.) His current

4

incarceration is based on that conviction.

## DISCUSSION

Defendants argue that Plaintiff may not pursue his claims because, if successful, they would necessarily implicate the validity of his conviction for resisting arrest. A plaintiff may not recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he or she can prove that the conviction or sentence has been overturned, expunged or declared invalid. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The test is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." *Id*. at 487.

Plaintiff pled no contest to a charge of violating California Penal Code § 148(a)(1),[3] which provides:

> Every person who wilfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician [], in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed shall be punished by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year, or by that fine and imprisonment.

An essential element of Section 148(a)(1) is the lawfulness of the officer's conduct when the defendant committed the offense. *Yount v. City of Sacramento*, 43 Cal. 4th 885, 894 (2008); *People v. Curtis*, 70 Cal.2d 347, 354-56, 357 n.9 (1969). Excessive force by a police officer is not a lawful performance of his or her duties. *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1409 (Cal. Ct. App. 2002).

Defendants assert that, if Plaintiff were to prevail on his excessive force claims, this result would require a finding that defendants Mattocks and Benitez acted unlawfully, which would invalidate Plaintiff's no contest plea. Where a plaintiff has been convicted of resisting arrest under California Penal Code Section 148(a), *Heck* bars a Section 1983 claim that the officer used excessive force during the arrest if the plaintiff's claim would, if proven true, necessarily imply the invalidity of the resisting arrest conviction. *See Hooper v. County of San Diego*, 629 F.3d

---

[3] In California, a plea of nolo contendere has the same effect as a guilty plea or guilty verdict for the purposes of a *Heck* analysis. *See Wetter v. Napa*, 2008 WL 62274 (N.D. Cal. Jan. 4, 2008); *Nuno v. County of San Bernardino*, 58 F.Supp.2d 1127, 1135 (C.D.Cal. 1999).

1127, 1132-30 (9th Cir. 2011); *see also Smith v. City of Hemet*, 394 F.3d 689, 697-98 (9th Cir. 2005) (en banc) (*Heck* bar applies if the resistance that is basis of conviction and claimed excessive force both took place during course of arrest).

*Heck* is not a bar to Plaintiff's excessive force claims, however, "if the use of excessive force occurred *subsequent to* the conduct on which his conviction was based." *Smith*, 394 F.3d at 698. In *Smith*, the Court held that the acts of resistance and the acts of excessive force must occur during the same "phases" of police activity for the *Heck* bar to apply. 394 F.3d at 698-99. The court found that there were two distinct phases in the interactions between the police and suspect: an investigation phase when the officers talked or attempted to talk to the suspect, and a second phase when they tried and then eventually arrested the plaintiff. *Id.* at 698. The plaintiff claimed that he had resisted or disobeyed the officers in both phases, and that the officers had used excessive force only in the second (arrest) phase. *Id.* Because his conviction under California Penal Code § 148(a)(1) could have been based upon his actions in the first phase, when the officers were not acting unlawfully by using excessive force, success on his Section 1983 claim in which he showed they used excessive force in the second phase would not *necessarily* imply the invalidity of his conviction, and the *Heck* bar did not apply. *Id.* at 699.

The Ninth Circuit subsequently addressed this issue again in a case in which the officers and the suspect did not interact in distinct phases, but in one "continuous transaction." *Hooper*, 629 F.3d at 1133. The court held that "a conviction under California Penal Code § 148(a)(1) does not bar a Section 1983 claim for excessive force under *Heck* when the conviction and the Section 1983 claim are based on different actions during 'one continuous transaction.'" *Id.* at 1134; *see id.* at 1129 (plaintiff admitted that she had jerked her hand away and struggled with the officer on the ground, but claimed that after she stopped resisting, the officers then summoned a dog to bite her).

On the record before the Court, the *Heck* bar applies. Under Plaintiff's version of events, which must be accepted as true and viewed in a light most favorable to him at this stage, *see Hooper*, 629 F.3d at 1129, he did not provide any resistance to the officers. Plaintiff swears that when Mattocks arrived at the scene, Plaintiff had already thrown the hammer and broom into a bush five feet away, and then he followed Mattocks' orders to initially stay put before slowly

approaching, to stop and get down on the ground, and to stay down on the ground without resisting the handcuffs. He denies disobeying Mattocks' orders, waving weapons or his arms at him, or threatening or continuing to approach him once Mattocks told him to stop and get down. Indeed, according to Plaintiff, when Mattocks fired the taser shot, Plaintiff was already getting down to the ground. Further, he claims that the baton strike was excessive because once he was on the ground, he made no motion to get up or reach for the broom or hammer, which were approximately 18 feet away at that time. If Plaintiff proves his claim of excessive force, which is premised on his sworn testimony that he did not resist, obstruct or delay Mattocks or the other officers in carrying out his arrest, it would necessarily imply the invalidity of his conviction for engaging in such resistance under California Penal Code § 148(a).

*Smith* and *Hooper* are distinguishable: unlike the plaintiffs in those cases, Plaintiff here insists that he never resisted the officers at any point in their interaction. As the California Supreme Court has recognized, if a plaintiff's Section 1983 claim rests on an account in which he never resisted the officers, then success on such a claim would mean that he never resisted, which necessarily contradicts a conviction that is based on the fact that he did resist the officers. *Yount v. City of Sacramento*, 43 Cal. 4th 885, 898 (2008). *Heck* would bar the plaintiff's Section 1983 claim to "the extent that [it] alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ any force against him." *Id.*; *see also Hooper*, 629 F.3d at 1132 (recognizing this distinction drawn by *Yount*). On the other hand, to the extent the plaintiff "does not deny that he resisted the officers (or that the officers had the right to respond with reasonable force), he poses no challenge to his conviction, and to that extent, his section 1983 claim for damages" is not barred by *Heck*.

As discussed above, Plaintiff asserts that he never resisted Mattocks or the other officers, posed no reasonable threat to them, and that they had no justification to use any force against him. Put differently, under his version of the events, at no point in their interaction did he engage in the conduct proscribed by California Penal Code § 148(a) and to which he pled guilty, namely "resist[ing], obstruct[ing], or delay[ing]" the officers' lawful arrest. Plaintiff's theory that the officers' use of force was excessive depends on a finding that he did not resist the officers; he does

not contend that even if he did violate Penal Code Section 148(a), the use of the taser or baton was still excessive. Thus, if Plaintiff's excessive force claim as currently framed succeeds, it would necessarily imply the invalidity of his conviction for resisting arrest under California Penal Code Section 148(a). *See Beets v. County of Los Angeles*, 669 F.3d 1038, 1044-45 (9th Cir. 2012) (holding that the plaintiff's excessive force claim was barred by *Heck* because there was no separation between the plaintiff's criminal actions and the alleged use of excessive force); *Rodriguez v. Modesto*, 535 Fed. Appx. 643 (9th Cir. Aug. 2, 2013) ("Therefore, to the extent Plaintiffs maintain they did nothing wrong and were arrested without reason, the district court correctly dismissed their § 1983 and state law claims in light of *Heck* and its California analogue, because success on such claims would necessarily imply Plaintiffs did not violate § 148(a)(1)."). Defendants' motion for summary judgment must therefore be granted.

For similar reasons, Plaintiff's claim that Defendants falsified the police reports may not proceed under *Heck*. Plaintiff contends that the police falsely reported that he ignored Mattocks' orders to stop and get down and that he tried to get up and reach for the broom and hammer after he did get down. Plaintiff's claims, of course, depend on a finding that he did not do these things and that the police did not have cause to charge him with resisting arrest. If Plaintiff proves that these reports are false because he did not do these things, then he will have proven that he did not resist the officers, and his conviction under California Penal Code § 148(a) would of necessity be implicitly invalid. Therefore, this claim is also barred under *Heck*.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims under *Heck*. Plaintiff may pursue his claims in a future case if his conviction for resisting arrest under California Penal Code § 148(a) has been overturned, expunged or declared invalid. As summary judgment must be granted to Defendants under *Heck*, their alternative arguments need not be reached.

Following briefing on the summary judgment motion, Plaintiff wrote a letter requesting a subpoena duces tecum to obtain medical records showing the extent of his injuries, and to obtain a copy of his taped interview with Sergeant Hunt at the hospital on the night of the arrest. Neither the existence nor the extent of his injuries or the contents of the taped interview would change the

8

conclusion that because of Plaintiff's conviction under California Penal Code § 148(a), Defendants are entitled to summary judgment on Plaintiff's claims under *Heck*. Plaintiff's request for a subpoena is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (dkt. 20) is GRANTED. Plaintiff's cross-motion for summary judgment and request for a subpoena (dkt. 29, 31) are DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: December 22, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge